# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**LUZ ANDREA MALDONADO,**

       **Plaintiff,**

      **vs.**                                    **Civ. No. 21-862 JFR**

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration,**

       **Defendant.**


## MEMORANDUM OPINION AND ORDER[1]

    **THIS MATTER** is before the Court on the Social Security Administrative Record

(Doc. 17)[2] filed January 7, 2022, in connection with Plaintiff's *Motion to Reverse or Remand*

*for a Rehearing With Supporting Memorandum,* filed April 25, 2022.  Doc.  21.  Defendant

filed a Response on June 24, 2022.  Doc. 24.  Plaintiff filed a Reply on July 8, 2022.  Doc. 25.

The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C.

§§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law

and being fully advised in the premises, the Court finds that Plaintiff's motion is well taken and

shall be **GRANTED**.

## I.  Background and Procedural Record

    Plaintiff Liz Andrea Maldonado ("Ms. Maldonado") alleges that she became disabled on

August 1, 2013, at the age of thirty-seven years and four months, because of fibromyalgia, sleep

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Doc. 10).

[2]  Hereinafter, the Court's citations to Administrative Record (Doc. 17), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

apnea, asthma, gastrointestinal issues, severe major depression and swallowing problems.

Tr. 338.  Ms. Maldonado completed high school in 1995 and attended special education classes

throughout.  Tr. 339, 2073.  In 1997, Ms. Maldonado received vocational training through the

New Mexico Department of Vocational Rehabilitation.  Tr. 2073.  Ms. Maldonado worked as a

retail custodian, restaurant food preparer, school cafeteria general helper, and motel

housekeeper.  Tr. 327, 339.  Ms. Maldonado stopped working on September 5, 2016, because of

her medical conditions.  Tr. 338.  Ms. Maldonado's date of last insured is December 31, 2021.[3]

Tr. 1787.  Therefore, to receive disability insurance benefits, Ms. Maldonado must show she

was disabled prior to that date.  *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346,

1347 (10th Cir. 1990).

On October 14, 2016, Ms. Maldonado filed applications for Social Security Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C.

§ 401 *et seq*. and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42

U.S.C. § 1381 et seq.  Tr. 281-82, 282-88.  On February 6, 2017, Ms. Maldonado's applications

were denied.  Tr. 100, 101, 102-24, 125-47, 198-202, 203-206.  They were denied again at

reconsideration on June 8, 2017.  Tr. 148-72, 172-95, 196, 197, 211-14, 215-18.  Upon

Ms. Maldonado's request, Administrative Law Judge (ALJ) Lillian Richter held a hearing on

October 4, 2018.  Tr. 57-99.  Ms. Maldonado appeared at the hearing with attorney

representative Laura Johnson.  *Id*.  On February 22, 2019, ALJ Richter issued an unfavorable

decision.  Tr. 26-50.  On January 3, 2020, the Appeals Council issued its decision denying

Ms. Maldonado's request for review and upholding the ALJ's final decision.  Tr. 1-6.

---

[3] To qualify for DIB, a claimant must establish that he met the statutory requirements for disability on or before her date of last insured. *See* 42 U.S.C. §§ 416(i)(3), 423(c)(1); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

On February 25, 2020, Ms. Maldonado filed a new application for DIB.  Doc. 2011-17.

On March 3, 2020, Ms. Maldonado timely filed a Complaint seeking judicial review of the Commissioner's January 3, 2020, final decision.  USDC NM Civ. No. 20-185 KK Doc. 1.

On October 9, 2020, the Commissioner filed an *Unopposed Motion to Remand for Further Proceedings* and Judgment was entered on the same date.  Tr. 1882-83, 1884.  On remand, the Notice of Order of Appeals Council stated in pertinent part

> [t]he claimant filed a subsequent claim for Title II disability benefits on February 24, 2020.  The Appeals Council's action with respect to the current claims renders the subsequent claim duplicate.  Therefore, the ALJ will consolidate the claims files, associate the evidence, and issue a new decision on the consolidated claims.  *Upon remand, the ALJ should apply the prior rules to the consolidated case.*

Tr. 1890 (emphasis added).

On April 6, 2021, ALJ Richter held a second hearing.  Tr. 1811-1840.  Ms. Maldonado appeared at the hearing with attorney representative Kathryn O'Neill.  *Id*.  On July 22, 2021, ALJ Richter issued an unfavorable decision.  Tr. 1782-1801.

On September 2, 2021, Ms. Maldonado timely filed a Complaint seeking judicial review of the Commissioner's July 22, 2021, final decision.  Doc. 1.

## II. Applicable Law

### A.    Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the

familiar five-step sequential analysis to determine whether a person satisfies the statutory

criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4]  If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.

> (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431

F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b).

claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

    **B.**    <u>**Standard of Review**</u>

    The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). In undertaking its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency. *Langley*, 373 F.3d at 1118.

## III. <u>Analysis</u>

The ALJ made her decision that Ms. Maldonado was not disabled at step five of the sequential evaluation.  Tr. 1799-1801.  The ALJ determined that Ms. Maldonado met the insured status requirements of the Social Security Act through December 31, 2021, and that she had not engaged in substantial gainful activity from her alleged onset date of August 1, 2013.[5] Tr. 1787.  She found that Ms. Maldonado had severe impairments of major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder ("PTSD"), mild intellectual disability, bilateral lateral epicondylitis, asthma, fibromyalgia, headaches, myofascial pain syndrome, degenerative disc disease of the lumbar spine, chronic fatigue syndrome, pelvic pain syndrome, obesity, obstructive sleep apnea, and De Quervain's tenosynovitis.  Tr. 1788.  The ALJ also found that Ms. Maldonado had nonsevere impairments of status-post hysterectomy, reflux disease, dysphagia, and ventral hernia.  *Id.*  The ALJ determined, however, that Ms. Maldonado's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 1788-792.  Accordingly, the ALJ proceeded to step four and found that Ms. Maldonado had the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally stoop, kneel, crouch, crawl, balance, and climb ramps/stairs; but can never climb ladders, ropes, or scaffolds.  She should avoid exposure to vibration, extreme heat, extreme cold, dust, odors, fumes, pulmonary irritants, and unprotected heights/hazardous machinery.  The claimant can occasionally reach overhead bilaterally and can frequently reach in all other directions bilaterally.  She can frequently handle, finger, and feel bilaterally.  The claimant can perform simple, routine work, can have occasional interaction with supervisors, coworkers, and members of the public, can understand and communicate simple information, can make simple work-related decisions in a workplace with few changes in the routine work setting, and can remain on-task for two hours at a time.

---

[5] The ALJ noted that Ms. Maldonado worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity.  Doc. 1787.

Tr. 1792.  The ALJ determined that Ms. Maldonado could not perform her past relevant work, but that considering Ms. Maldonado's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.[6]  Tr. 1799-1801.  The ALJ, therefore, concluded that Ms. Maldonado was not disabled. *Id.*

In support of her Motion, Ms. Maldonado argues that the ALJ committed legal error by (1) failing to properly weigh the opinions of medical providers Susan Miller, Psy.D. and Kristen Lewis, LPCC; and (2) failing to properly weigh the opinion of psychological consultative examiner Robert Krueger, Ph.D.  Doc. 21 at 16-26.

For the reasons discussed below, the Court finds the ALJ failed to properly evaluate the medical opinion evidence related to Ms. Maldonado's ability to do work-related mental activities and that the ALJ's reasons for rejecting the medical opinion evidence are not supported by substantial evidence.  For these reasons, this case requires remand.

**A.    Medical Opinion and Other Medical Source Legal Standards**

The applicable regulations and case law require an ALJ to consider all medical opinions and discuss the weight assigned to those opinions.[7]  *See* 20 C.F.R. §§ 404.1527(c); *see also Hamlin,* 365 F.3d at 1215 ("[a]n ALJ must evaluate every medical opinion in the record,

---

[6] The vocational expert testified that Ms. Maldonado would be able to perform the requirements of representative occupations such as a Small Products Assembler, DOT #706.684-022, which is performed at the light exertional level with approximately 364,000 jobs in the national economy; Merchandise Marker, DOT #209.587-034, which is performed at the light exertional level with 227,000 jobs in national economy; and a Production Assembler, DOT #706.687-010, which is performed at the light exertional level with 59,000 job in the national economy.  Tr. 1800.

[7] The agency issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017.  *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); (Doc. 19 at 4 n.3).  However, because Ms. Maldonado filed her claim on October 14, 2016, the previous regulations for evaluating opinion evidence apply to this matter.  *See* 20 C.F.R. 416.927.

although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional.").  "An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion."  *Hamlin*, 365 F.3d at 1215. (citing *Goatcher v. United States Dep't of Health & Human Servs*., 52 F.3d 288, 290 (10th Cir. 1995)).[8]  An ALJ's decision need not expressly apply each of the six relevant factors in deciding what weight to give a medical opinion.  *Oldham v. Astrue*, 509 F3d. 1254, 1258 (10th Cir. 2007).  However, the decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and reasons for that weight."  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  The ALJ's decision for according weight to medical opinions must be supported by substantial evidence.  *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005).  An ALJ is required to give controlling weight to the opinion of a treating physician if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *Id.*  Generally, the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight of all.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it."  *Hamlin*, 365 F.3d at 1215.

Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she ultimately assigns the opinion.  *Langley*, 373 F.3d at 1119 (citation omitted).  Failure to do so constitutes legal error.  *See Kerwin v. Astrue*,

---

[8] These factors include the examining relationship, treatment relationship, length and frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist.  *See* 20 C.F.R. § 404.1527(c)(2)-(6).

244 F. App'x. 880, 884 (10th Cir. 2007) (unpublished).  In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted).  Instead, an ALJ "must ... explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7.  Further, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

The regulations also contemplate the use of information from "other sources," both medical[9] and non-medical,[10] "to show the severity of an individual's impairment(s) and how it affects the individual's ability to function." *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (citing 20 C.F.R. §§ 416.902); *see* SSR 06-03p, 2006 WL 2329939, at *2.[11]  "Information from these 'other sources' cannot establish the existence of a medically determinable impairment.  Instead, there must be evidence from an 'acceptable medical source'[12] for this purpose." SSR 06-03p, 2006 WL 2329939, at *2.[13]  An ALJ is required to explain the weight

---

[9] For claims filed before March 27, 2017, other medical sources are defined as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapist.  SSR 06-03p, 2006 WL 2329939, at *2; SSR 96-2p, 2017 WL 3928298.

[10] For claims filed before March 27, 2017, non-medical sources include, but are not limited to, educational personnel, such as schoolteachers, counselors, early intervention team members, developmental center workers, and daycare center workers; public and private social welfare agency personnel, rehabilitation counselors; and spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers.  SSR 06-03p, 2006 WL 2329939, at *2; SSR 96-2p, 2017 WL 3928298.

[11] SSR 06-3p is rescinded for claims filed on or after March 27, 2017.  SSR 96-2p, 2017 WL 3928298, at *1.  For claims filed after March 27, 2017, all medical sources can make evidence that are categorized and considered as medical opinions.  *Id.* at *2.

[12] For claimed filed before March 27, 2017, "acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  SSR 06-03p, 2006 WL 2329939, at *1; SSR 96-2p, 2017 WL 3928298.

[13] *See* fn. 3, *supra.*

given to opinions from other medical sources and non-medical sources who have seen a claimant in their professional capacity, "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6; *see also Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1163 (10th Cir. 2012) (finding that ALJ was required to explain the amount of weight given to other medical source opinion or sufficiently permit reviewer to follow adjudicator's reasoning).  The weight given to this evidence will vary according to the particular facts of the case, the source of the opinion, the source's qualifications, the issues that the opinion is about, and other factors, *i.e.,* how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment; and any other facts that tend to support or refute the opinion.  SSR 06-03p, 2006 WL 2329939, at *4-5.[14]

**B.**    **Treating Psychologist Susan Miller, Psy.D. and Kristen Lewis, LPCC[15]**

**1.**    **Susan Miller, Psy.D.**

On December 7, 2017, Ms. Maldonado presented to Susan Miller, Psy.D., based on a referral from Andrea Bliss, PA-C, UNM Department of Neurosurgery.[16]  Ms. Maldonado

---

[14] *Id.*

[15] Prior to being referred to and seeking behavioral health treatment from Dr. Miller and Kristen Lewis, LPCC, Ms. Maldonado sought and received treatment for major depression and anxiety beginning in 2012 through 2016 from her primary care physician, Kevin Henry, M.D., and the Behavioral Health Department at San Juan Regional Medical Center.

[16] Ms. Maldonado saw PA-C Bliss for pain management.  PA-C Bliss referred Ms. Maldonado to psychology department for "coping skills as she does not want to take medication." Tr. 1652.

reported a history of fibromyalgia, depression and anxiety.  Tr. 1649-51.  Dr. Miller noted that

Ms. Maldonado reported trying a variety of medications for depression and pain, but that they

all made her too lethargic to function and take care of her son with special needs.[17] [18]  *Id.*

Dr. Miller noted that Ms. Maldonado "has a life filled with ACES."[19]  *Id.*  Dr. Miller noted that

Ms. Maldonado talked nonstop for an hour.  *Id.*  Dr. Miller made Axis I diagnoses of chronic

pain related to fibromyalgia, depression due to pain, and anxiety due to pain.  *Id.*  She made an

Axis V diagnosis with a GAF score of 55.[20]  Dr. Miller indicated she would begin treatment by

using breathing and coping techniques to help decrease Ms. Maldonado's anxiety.  *Id.*

Ms. Maldonado saw Dr. Miller twenty-two times from December 7, 2017, through

November 17, 2020.  1635-36, 1639-40, 1645-51, 2240-45, 2248-51, 2258-60, 2263-64, 2273-

75, 2283-84, 2287-89, 3302-053.   On February 15, 2018, Dr. Miller added cognitive behavioral

therapy to her treatment plan.  Tr. 1647-48.  On February 28, 2019, Dr. Miller amended her

Axis I diagnoses to include PTSD, anger, chronic hypoxia and chronic fatigue.  Tr. 2273-75.

Dr. Miller also amended her Axis V diagnosis to a GAF score of 60.[21]  *Id.*

---

[17] The record demonstrates that Ms. Maldonado has one adult child who was born with Cornelia de Lange Syndrome and is autistic.  Tr. 12, 1650.  Ms. Maldonado's former spouse has legal custody, but Ms. Maldonado has visitation rights and her son stays with her on weekends.  Tr. 12.  Ms. Maldonado lives with her mother, who helps care for Ms. Maldonado's son.  *Id.*

[18]  Ms. Maldonado's primary care physician, Kevin Henry, M.D., noted on October 17, 2014, that Ms. Maldonado's depression and anxiety had not been responsive to SSRIs or SNRIs and that she had not tolerated them well.  Tr. 906-07, 907-09.

[19]  Adverse Childhood Experiences.

[20] The GAF is a subjective determination based on a scale of 100 to 1 of a "clinician's judgment of the individual's overall level of functioning."  *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) at 32.   A GAF score of 51-60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).  *Id.* at 34.

[21] *Id.*

On August 30, 2018, Dr. Miller prepared a *Medical Assessment of Ability To Do Work-Related Activities (Mental)* on behalf of Ms. Maldonado.  Tr. 1749-50.  Therein, she assessed that Ms. Maldonado had *slight* limitations in her ability to (1) interact appropriately with the general public; (2) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and (3) be aware of normal hazards and take adequate precautions.  *Id.*

She assessed that Ms. Maldonado had *moderate* limitations[22] in her ability to (1) remember locations and work-like procedures; (2) carry out very short and simple instructions; (3) maintain attention and concentration for extended periods of time (i.e., 2 hour segments); (4) sustain an ordinary routine without special supervision; (5) make simple work-related decisions; (6) ask simple questions or request assistance; (7) accept instructions and respond appropriately to criticism from supervisors; (8) travel in unfamiliar with places or use public transportation; and (9) set realistic goals or make plans independently of others.  *Id.*

Finally, she assessed that Ms. Maldonado had *marked* limitations[23] in ability to (1) carry out detailed instructions; (2) perform activities within a schedule, maintain regular attention and be punctual within customary tolerance; (3) work in coordination with/or proximity to others without being distracted by them; (4) complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods; (5) get along with coworkers or peers without

---

[22] The form explains that a moderate limitation "seriously interferes with the individual's ability to perform the designated activity on a regular and sustained basis, *i.e.,* 8 hours a day, 5 days a week, or an equivalent schedule. The individual may be able to perform this work-related mental function on a limited basis.  However, the individual should not be placed in a job setting where this mental function is critical to job performance or to job purpose." Tr. 1750.

[23] The form explains that a marked limitation precludes the individual's ability usefully to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent schedule.  The individual cannot be expected to function independently, appropriately and effectively on a regular and sustained basis.  Tr. 1750.

distracting them or exhibiting behavioral extremes; and (6) respond appropriately to changes in the work place.  *Id.*

Dr. Miller explained that Ms. Maldonado was "easily overwhelmed and often does not understand"; "has trouble helping herself never mind helping others"; that "pain forces her to rest often"; and that Ms. Maldonado has a "son who is disabled and now blind and she has a hard time taking care of him without lots of help."  *Id.*

## 2.  Kristen Lewis, LPCC

On September 15, 2016, Ms. Maldonado presented to Kristen Lewis, LPCC, at Presbyterian Medical Services Behavioral Health.  Tr. 1375-80.  Ms. Maldonado reported a two-year history of depression and that it was very difficult to meet her home, work and social obligations.  Tr. 1375.  Ms. Maldonado described a loss of energy, loss of interest in activities she used to enjoy, daily irritability and anger outbursts when triggered, nightly sleep disturbance, and fluctuating appetite.  Tr. 1378-79.  LPCC Lewis noted the likelihood of childhood and current trauma symptoms.  Tr. 1375.  On mental status exam, LPCC Lewis indicated, *inter alia*, that Ms. Maldonado's mood was angry, her affect full, her speech rapid, her thought process racing, and that she had an impaired ability to make reasonable decisions. Tr. 1378.  LPCC Lewis diagnosed severe episode of recurrent major depressive disorder, with psychotic features, recurrent.  Tr. 1379.  She planned to refer Ms. Maldonado for outpatient therapy to address her intensive depressive symptoms and work on improving mood regulation skills; for a psychiatric evaluation to assist with mood stabilization; and to community counseling supportive services to assist Ms. Maldonado in finding resources to become more independent.  Tr. 1380.

Ms. Maldonado saw LPCC Lewis twenty times from September 5, 2016, until July 20, 2017.  Tr. 1375-80, 1382-84, 1397-98, 1550-56, 1560-62, 1567-69, 1572-74, 1577-79, 1586-88, 1591-1602, 1605-13, 1616-18, 1623-25.  LPCC Lewis's diagnosis remained the same throughout.

On April 10, 2017, LPCC Lewis prepared a *Medical Assessment of Ability To Do Work-Related Activities (Mental)* on Ms. Maldonado's behalf.  Tr. 1752-53.  Therein, she assessed that Ms. Maldonado had *slight* limitations in her ability to (1) understand and remember very short and simple instructions; (2) carry out very short and simple instructions; (3) sustain an ordinary routine without special supervision; (4) make simple work-related decisions; (5) complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods; (6) ask simple questions or request assistance; (7) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (8) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (9) respond appropriately to changes in the work place; (10) be aware of normal hazards and take adequate precautions; (11) travel in unfamiliar places or use public transportation; and (12) set realistic goals or make plans independently of others.  *Id.*

LPCC Lewis assessed that Ms. Maldonado had *moderate* limitations in her ability to (1) remember locations and work-like procedures; (2) understand and remember detailed instructions; (3) carry out detailed instructions; (4) maintain attention and concentration for extended periods of time (i.e., 2-hour segments); (5) work in coordination with/or proximity to others without being distracted by them; (6) interact appropriately with the general public; and (7) accept instructions and respond appropriately to criticism from supervisors.  *Id.*

LPCC Lewis assessed that Ms. Maldonado had *marked* limitations in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance.  *Id.*

LPCC Lewis explained that Ms. Maldonado reported needing to take breaks when she was working due to not feeling well; that she has "difficulty at times accepting feedback from others; that Ms. Maldonado "seems to be fairly strong willed and knows how to advocate for her needs.  She prefers not to use medical transportations due to inconsistencies"; and that Ms. Maldonado "struggles with regulating her moods and being reactive to anger when she feels triggered or when her health is not good or in severe physical pain."  *Id.*

LPCC Lewis also opined that Ms. Maldonado met the criteria for Listings 12.04 *Depressive, Bipolar and Related Disorders* and 12.06 *Anxiety and Obsessive-Compulsive Disorders*.  Tr. 1754, 1755.

The ALJ determined that Dr. Miller and LPCC Lewis's opinions carried "little weight." Tr. 1797.  The ALJ explained as follows:

> Though "moderate" and "marked" are defined on these opinion forms, the definition of "moderate" is overly vague and fails to provide a specific functional restriction, indicating the claimant "may be able to" perform the function "on a limited basis."  Further, a "marked" limitation is defined as total preclusion on the designated activity.  Such extreme limitations are inconsistent with the claimant's ability to care for a special needs child (Ex. 32F/27),[24] manage a busy schedule (Ex. 21F/25; 30F/158),[25] and improve her coping skills.  Ex. 15F, 19; 32F/29,

---

[24] Exhibit 32F at page 27 is a May 12, 2020, treatment note prepared by LPCC Antoinette Sandoval Carpenter in which LPCC Carpenter noted that Ms. Maldonado reported stress with caring for her special needs son and as a coping skill was taking him for drives.  Tr. 2981.

[25] Exhibit 21F at page 25 is a May 2, 2017, treatment note prepared by PC-C Ruben Franco in which he notes that Ms. Maldonado was extremely active with her son elevating her symptoms, and that in the past two weeks Ms. Maldonado had been going to integrated pain and rehabilitation center and undergoing massage, acupuncture and physical therapy which she found helpful.  Tr. 1656.  Exhibit 30F at page 158 is a January 24, 2019, treatment note prepared by PA-C Andrea Bliss in which she notes that Ms. Maldonado reported her schedule had been "very hectic" and had prevented her from going to pain clinic.  Tr. 2278.

48.[26]  As such, Dr. Miller and Ms. Lewis' opinions as treating providers are not entitled to controlling weight.

*Id.*

Ms. Maldonado argues that the ALJ erred by analyzing the opinions of Dr. Miller, a treating physician, and LPCC Lewis, and other medical source provider, together because different legal standards apply to their opinions.  Doc. 21 at 18.  Ms. Maldonado further argues that the reasons the ALJ provided for rejecting their opinions are insufficient and are neither specific nor legitimate as required.  *Id.* at 19.  Ms. Maldonado asserts that the ALJ's first reason for rejecting their opinions, *i.e.,* that the terms "moderate" and "marked" were "overly vague" and "extreme," is without merit because those terms as defined and used by the Agency's own medical consultants are either more vague or more preclusive than reflected on the forms prepared by Dr. Miller and LPCC Lewis.[27]  *Id.* at 19-20.  Ms. Maldonado asserts, therefore, that because it is not clear that the definitions pointed to by the ALJ actually represent any meaningful conflict with the Agency's own understanding of the terms at issue, the ALJ's reasoning does not withstand subsequent review.  *Id.*

Ms. Maldonado argues that the second reason the ALJ provided for rejecting their opinions, *i.e.,* that Ms. Maldonado cared for her special needs child, managed a busy schedule, and improved her coping skills, is equally unsupported because the record does not demonstrate that Ms. Maldonado did any of these activities without limitation.  Doc. 21 at 20-21.

---

[26] Exhibit 15F at pages 5 and 19 are May 22, 2016, and November 21, 2017, treatment notes prepared by LPCC Antoinette Sandoval Carpenter in which she notes that Ms. Maldonado was coping better with stress.  Tr. 1506, 1520. Exhibit 32F at pages 29 and 48 are April 28, 2020, and December 17, 2019, treatment notes prepared by LPCC Sandoval in which she notes that Ms. Maldonado is implementing positive coping skills under stress.  Tr. 2983, 3002.

[27] Ms. Maldonado explains that POMS DI 24510.063(B)(2)-(3) defines a moderate limitation as one in which "the individual's capacity to perform the activity is impaired" and defines a marked limitation as one in which "the individual cannot usefully perform or sustain the activity."  Doc. 21 at 19.

Additionally, Ms. Maldonado points out that the records cited by the ALJ to support her explanation fail to demonstrate a contradiction in either Dr. Miller's or LPCC Lewis's opinions regarding Ms. Maldonado's ability to do work-related mental activities.  *Id.*  For instance, while the record supports that Ms. Maldonado has visitation rights and cares for her special needs son during those times, she reported stress and an exacerbation of her symptoms while doing so. Additionally, Ms. Maldonado reported her schedule was "hectic" as opposed to "busy."  Last, Ms. Maldonado asserts that LPCC Carpenter's notations that Ms. Maldonado was "coping better" were surrounded by other relevant records noting, *inter alia*, that Ms. Maldonado continued to be anxious and overwhelmed with depression.  Doc. 21 at 22.

The Commissioner contends that the providers completed the same "check-the-box-style form" and that there is no law, regulation, or case suggesting that the ALJ erred by explaining the weight she gave to both opinions in the same analysis.  Doc. 24 at 9.  More to the point, the Commissioner contends, substantial evidence supports the ALJ's reasons for discounting both opinions.  *Id.* at 10-16.  In support, the Commissioner asserts that the opinions were "overly vague," conclusory, and failed to provide vocationally relevant limitations.  *Id.*  Vagueness, the Commissioner asserts, is a valid reason for discounting a medical opinion.  *Id.*  Further, citing *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995), the Commissioner asserts that the use of "moderate" and/or "marked" to assess a claimant's ability to do work-related mental activities fail to indicate what a claimant can do in relation to the mental requirements of unskilled, semi-skilled, or skilled work.  *Id.*

The Commissioner also contends that the ALJ properly concluded that Dr. Miller's and LPCC Lewis's opinions were inconsistent with Ms. Maldonado's activities.  Doc. 24 at 13-16. The Commissioner contends that Ms. Maldonado's ability to care for her son suggest an activity

level well beyond what Dr. Miller and LPCC Lewis opined.  *Id.*  The Commissioner further

contends that Ms. Maldonado's attending and volunteering at church, engaging in family

activities, and keeping up with doctor appointments for herself, her son and her mother

demonstrate her ability to do work-related mental activities beyond that which Dr. Miller and

LPCC Lewis opined.  *Id.*

> **B.**      **The ALJ Failed to Apply the Correct Legal Standards In Weighing
> Dr. Miller's and LPCC Lewis's Opinions and the ALJ's Reasons for
> Rejecting Their Opinions Are Not Supported by Substantial Evidence**

The ALJ failed to apply the correct legal standards in weighing Dr. Miller's and LPCC

Lewis's opinions.  Because Ms. Maldonado filed her applications on October 14, 2016,

20 C.F.R. §§ 404.1527, 416.927 and SSR 06-03p apply to the ALJ's evaluation of this opinion

evidence.  *See* 20 C.F.R. §§ 404.1527, 416.927 (evaluating opinion evidence for claims filed

before March 27, 2017); SSR 06-03, 2006 WL 2329939 (considering opinions and other

evidence from sources who are not "acceptable medical sources" in disability claims).

20 C.F.R. §§ 404.1527(a)(1) and 416.927(a)(1) state that "[m]edical opinions are statements

from acceptable medical sources that reflect judgments about the nature and severity of your

impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite

impairment(s), and your physical or mental restrictions."  The regulations go on to state that

more weight will be given to medical opinions from a source who has examined the claimant,

who has treated the claimant, who has treated the claimant over a period of time, and who has

knowledge about the claimant's impairment.  20 C.F.R. §§ 404.1527(c)(1)-(2) and

416.927(c)(1)-(2).  The regulations also state that more weight will be given to medical source

opinions that are supported by relevant evidence such as medical signs and laboratory findings;

that are consistent with the record as a whole; and that are rendered by a specialist about the

medical issues related to his or her area of specialty.  20 C.F.R. §§ 404.1527(c)(3)-(5) and

416.927(c)(3)-(5).

> SSR 06-03p states in pertinent part:
>
> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment.  *See* 20 CFR 404.1513(a) and 416.913(a).  Second, only "acceptable medical sources" can give us medical opinions.  *See* 20 CFR 404.1527(a)(2) and 416.927(a)(2).  Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight.  *See* 20 CFR 404.1527(d) and 416.927(d).
>
> Making a distinction between "acceptable medical sources" and medical sources who are not "acceptable medical sources" facilitates the application of our rules on establishing the existence of an impairment, evaluating medical opinions, and who can be considered a treating source.

SSR 06-03p at *2.  The ruling goes on to state that the factors described in 20 C.F.R.

§§ 404.1527 and 416.927 can be applied to opinion evidence from "other sources."  *Id.* at *4.

These factors include: how long the source has known and how frequently the source has seen

the individual; how consistent the opinion is with other evidence; the degree to which the source

presents relevant evidence to support an opinion; how well the source explains the opinion;

whether the source has a specialty or area of expertise related to the individual's impairment(s);

and any other factors which tend to support or refute the opinion.  *Id.*

It is undisputed that the ALJ failed to appreciate these distinctions or to apply the

appropriate regulatory and ruling standards in weighing Dr. Miller's and LPCC Lewis's

opinions.  Further, the Commissioner's argument that there is no law, regulation or case

suggesting that the ALJ erred by conflating her evaluation of these opinions flies in the face of

the Social Security Administration regulations and rulings, as well as the legal standards set

forth in Tenth Circuit case law discussed above.  *See* Section III.A, *supra*.  To be clear, the

Commissioner's argument that the appeal and review process afforded Social Security claimants and the requisite application of appropriate legal standards in that process are to be taken lightly or applied randomly at the ALJ's discretion and whim is an affront to the process.

In deciding how much weight to give a treating source opinion, in this case Dr. Miller, an ALJ must first determine whether the opinion qualifies for controlling weight. *Langley*, 373 F.3d at 1119 (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).  However, even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions *are still entitled to deference and must be weighed using all of the [regulatory] factors*." *Id.* (emphasis added).  Generally, the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight of all.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  Here, the ALJ referred jointly to Dr. Miller and LPCC Lewis as "treating providers" and stated she was not according either opinion controlling weight.[28]

The ALJ's determination, however, is completely silent with respect to her consideration of the regulatory and ruling factors as required when evaluating treating and other source medical opinions.  There is no evidence that the ALJ considered the length of time either of the providers treated Ms. Maldonado,[29] their knowledge of Ms. Maldonado's impairments,[30] how their treatment notes supported their opinions,[31] whether their opinions were consistent with the

---

[28] *See* SSR 06-03p, 2006 WL 2329939, at *2 (explaining that only "acceptable medical sources" are entitled to controlling weight).

[29] Dr. Miller treated Ms. Maldonado over the course of three years, seeing her on twenty-two occasions.  *See* Section III.B.1, *supra*.  LPCC Lewis treated Ms. Maldonado for approximately ten months, seeing her on twenty occasions. *See* Section III.B.2, *supra*.

[30] *Id.*

[31] *Id.*

record as a whole,[32] or whether they rendered opinions within their areas of specialty.[33]   The

ALJ's failure to apply the correct legal standard in evaluating this medical opinion evidence is

clear error.

Additionally, the Court finds that the ALJ's explanations for rejecting Dr. Miller and

LPCC Lewis's opinions are not supported by substantial evidence.   As to the ALJ's first reason,

the Court finds no merit to the Commissioner's argument that the use of severity ratings such as

"moderate" and "marked" when completing a medical assessment form regarding a claimant's

ability to do work-related mental activities are so vague as to render them meaningless.   To

begin, the Commissioner's reliance on *Bean* is misplaced.   In *Bean*, the claimant argued, *inter*

*alia*, that the ALJ erred in rejecting an opinion by her treating physician that she suffered

"severe limitations in her ability to stand, walk, stoop, bend, lift, carry and climb stairs."   77

F.3d at 1214.   The court, however, agreed with the ALJ's comment that the treating physician's

opinion was "generic and did not accurately assess plaintiff's true functional capabilities."   *Id.*

The court added that "[s]evere limitations," by itself, does not indicate exactly what a plaintiff

---

[32] Six medical assessments related to Ms. Maldonado's ability to do work-related mental activities were rendered in this case by Ms. Maldonado's treating, examining consultative and other source medical providers.   Tr. 1752-53 (Kristen Lewis, LPCC); Tr. 1627-28 (Antoinette Carpenter Sandoval, M.A., LPCC (Aug. 1, 2018)); Tr. 1631 (Kevin Henry, M.D.); Tr. 1749-50 (Susan Miller, Psy.D.); Tr. 18-19 (Robert Krueger, Ph.D.); and Tr. 3298 (Antoinette Carpenter Sandoval, M.A., LPCC (Feb. 21. 2021)).   These assessments are largely consistent in that Ms. Maldonado has *moderate and/or marked limitations* in many of the mental abilities deemed critical for performing unskilled work, *i.e.,* the ability to remember locations and work-procedures; the ability to understand and remember very short and simple instructions; the ability to carry out very short and simple instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or in proximity to others without being distracted by them; the ability to make simple work-related decisions; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to ask simple questions or request assistance; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to respond approximately to changes in the work setting; and the ability to be aware of normal hazards and take appropriate precautions.   *Id.*; *See* POMS DI 25020.010(B)(3) Mental Limitations (describing mental limitations critical for performing unskilled work).

[33] Dr. Miller is a doctor of psychology and LPCC Lewis is a licensed professional clinical counselor.

can do in relation to the physical exertional requirements of sedentary, light, moderate, and heavy work." *Id.* While the Court agrees that assessing a claimant's ability to do work-related physical activities requires more explanation than a bare severity rating and that a lack of supporting evidence goes to the weight accorded a treating source opinion,[34] the Court does not agree with the Commissioner's attempt to elevate the court's observation in *Bean* to a bright-line rule that the use of severity ratings such as "moderate" or "marked" when assessing a claimant's ability to do work-related mental activities fails to indicate exactly what a claimant can do and are therefore inherently vague. Moreover, the opinions at issue here were not isolated comments in a treatment note, but rendered on assessment forms that identified each of the twenty mental functions grouped in four broad categories deemed relevant by the Social Security Administration when assessing mental functional capacity and utilized a severity rating system with defined terms similar to that used by Agency consultants. *See* POMS DI 24510.060 – Mental Residual Functional Capacity Assessment.[35] The Commissioner's argument, therefore, is unavailing.

As to the ALJ's second reason, the Tenth Circuit has held that an ALJ's reliance on sporadic and intermittent performance of daily activities to establish that a claimant is capable

---

[34] *See* 20 C.F.R. §§ 404.1545, 416.945 (discussing residual functional capacity); *see also* SSR 96-8p, 1996 WL 374184 (assessing residual functional capacity).

[35] The Commissioner argues that comparing the SSA's Mental Residual Functional Capacity Assessment's rating system to the assessment forms used here is misplaced because the context of the MRFCA contemplates a nonexamining State agency consultant using the severity rating system to make certain findings in Section I of the MRFCA that then serve as a guide to render an assessment in Section III where nonexamining consultants are instructed not to use severity ratings but to describe a claimant's ability in terms of work-related functions. Doc. 24 at 12. The Court is not persuaded. Tenth Circuit case law instructs that an ALJ may not "turn a blind eye to [] Section I limitations" and POMS requires that an ALJ address both Section I and Section III findings when evaluating nonexamining State agency opinion evidence. See *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished); *see also Silva v. Colvin*, 203 F.Supp.3d 1153, 1157-1164 (D.N.M. 2016); POMS DI 24515.007(1)(b) (explaining that "[a]ll evidence from nonexamining sources is opinion evidence."). The Commissioner, therefore, has failed to demonstrate that a difference in forms relieves an ALJ of her obligation to consider severity ratings when evaluating medical opinion evidence and assessing a claimant's ability to do work-related mental activities.

of engaging in substantial gainful activity is insufficient when a claimant's medical complaints are supported by substantial evidence.  *See generally Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987) (finding that the ability to do minor house chores and drive for brief intervals does not undercut allegations of disabling pain); *see also Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983) (finding that sporadic performance of a few household tasks, working on cars, and driving on occasional recreational trips did not establish that a person was capable of engaging in substantial gainful activity).  Here the records cited by the ALJ fail to demonstrate that Ms. Maldonado easily cares for her disabled son or adequately manages a "busy" schedule.  Nor do the records cited by the ALJ support that Ms. Maldonado's improved coping skills diminished her ongoing symptoms of and treatment for severe depression and anxiety.  To the contrary, the medical evidence supports Ms. Maldonado's multiple mental impairments, and the ALJ has failed to demonstrate how Ms. Maldonado's caring for her disabled son during his visits, attending church, and engaging in limited daily and family activities undercut Dr. Miller's and LPCC Lewis's evaluation and assessment regarding Ms. Maldonado's ability to engage in substantial gainful activity and to do work-related mental activities.

For all of the foregoing reasons, the Court finds that the ALJ committed legal error in her evaluation of Dr. Miller's and LPCC Lewis's opinion evidence and that the ALJ's reasons for rejecting their opinions are not supported by substantial evidence.

## C.    <u>Remaining Issues</u>

The Court will not address Ms. Maldonado's remaining claim of error because it may be affected by the ALJ's treatment of this case on remand.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## IV.  <u>Conclusion</u>

For the reasons stated above, Ms. Maldonado's Motion to Reverse and Remand for a

Rehearing With Supporting Memorandum (Doc. 21) is **GRANTED.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge,**
**Presiding by Consent**